IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| LARRY MICHAEL SLUSSER, | ) |
| | ) |
|     Petitioner, | ) |
| v. | )     Civil Action No. 5:23-00114 |
| | ) |
| WARDEN KATINA HECKARD, | ) |
| | ) |
|     Respondent. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Memorandum in Support (Document Nos. 1 and 2), filed on February 13, 2023; and (2) Petitioner's Motion for Summary Judgment (Document No. 16), filed on May 10, 2023. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Petition and Motion for Summary Judgment, the undersigned finds and hereby respectfully recommends that both should be denied.

**FACT AND PROCEDURE**

On February 13, 2023, Petitioner, acting *pro se*,[1] filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Memorandum in Support. (Document Nos. 1, 2, 9, 10.) First, Petitioner argues that the First Step Act ("FSA") allows the BOP to apply earn time credits towards pre-release custody or supervised release for inmates with high or medium risk assessments.

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Document No. 1, p. 6.) Second, Petitioner asserts that the Warden is allowed to transfer an inmate with medium or high risk to pre-release custody or supervised release. (Id., pp. 6 – 7.) Petitioner argues that the Court should interpret the FSA as not precluding medium or high risk inmates from receiving the application of the earned time credit. (Document No. 2.) Petitioner indicates that if the Warden and the Unit Team would properly apply his FSA earned time credit, Petitioner would be eligible for immediate placement in a halfway house. (Id.) Petitioner further argues that he should be excused from exhausting his administrative remedies because "his claims are clearly based on statutory construction and statutory interpretation and Slusser cites that it would cause him irreparable harm." (Id.) As relief, Petitioner requests "immediate placement in the halfway house"[2] or placed on supervised release. (Document No. 2.)

    As Exhibits, Petitioner attached the following: (1) A copy of his "Request for Administrative Remedy Informal Resolution Form" dated January 26, 2022 (Document No. 2-1, p. 1); (2) A copy of a "Receipt – Administrative Remedy" from the Administrative Remedy Coordinator at FCI Beckley dated December 19, 2022 (Remedy ID No. 1145134-F1) (Id., p. 2); (3) A copy of Petitioner's "Request for Administrative Remedy" dated December 14, 2022 (Remedy ID No. 1145134-F1) (Id., p. 3); (4) A copy of Warden Katina Heckard's Response dated January 30, 2023 (Remedy ID No. 1145134-F1) (Id., p. 4); (5) A copy of a letter from Petitioner to the Mid-Atlantic Regional Office dated February 15, 2022 (Id., p. 5); (6) A copy of a "Rejection Notice – Administrative Remedy" from the Administrative Remedy Coordinator from the Mid-Atlantic Regional Office dated February 18, 2022 (Remedy ID No. 1110598-R1) (Id., p. 6); (7) A copy of a "Receipt – Administrative Remedy" from the Administrative Remedy Coordinator at

---

[2] The Docket Sheet reveals that Petitioner is currently at the Midway Rehabilitation Center in Knoxville, TN.

FCI Beckley dated March 2, 2022 (Remedy ID No. 1110816-F1) (Id., p. 7); (8) A copy of Warden Heckard's Response dated February 28, 2022 (Remedy ID No. 1110816-F1) (Id., p. 8); (9) A copy of a letter from Petitioner to the Mid-Atlantic Regional Office dated February 9, 2022 (Id., p. 9); and (10) A copy of a "Rejection Notice – Administrative Remedy" from the Administrative Remedy Coordinator from the Mid-Atlantic Regional Office dated February 18, 2022 (Remedy ID No. 1110598-R1) (Id., p. 10).

By Order entered on February 23, 2023, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 6.) On April 24, 2023, Respondent filed his Response to the Order to Show Cause. (Document No. 11.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner has failed to exhaust administrative remedies" (Id., pp. 2 – 4); (2) "Petitioner is not eligible for FTC release at this time" (Id., p. 4); and (3) "Petitioner does not have a protected liberty interest in being placed on home confinement or in an RCC" (Id., pp. 4 – 6). As Exhibits, Respondent attaches the following: (1) The Declaration of Destiny Spearen (Document No. 11-1, pp. 2 - 3); (2) A copy of Petitioner's "Inmate Profile" dated February 28, 2023 (Id., pp. 5 – 6); (3) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated February 28, 2023 (Id., pp. 8 – 10).

By Order and Notice entered on March 27, 2023, the undersigned notified Petitioner of his right to file a Reply to Respondent's Response. (Document No. 12, pp. 1 - 9.) On April 10, 2023, Petitioner filed his Reply. (Document No. 13.) Petitioner first argues that since the Respondent did not respond to his request for the "Court to make statutory interpretations," the Respondent waived such. (Id.) Second, Petitioner argues that Respondent's failure to exhaust argument is without merit

3

because Petitioner requested that exhaustion be excused. (Id.) Petitioner further states that his "statutory interpretation claims are legal and fail to implicate the BOP's expertise in any meaningful way." (Id.) Petitioner claims that he has accrued 365 days towards release, and 115 days towards RRC. (Id.) Thus, Petitioner argues that if his "statutory interpretation is correct and he is eligible to apply his earned time credits despite his medium risk of recidivism, Petitioner is 50 days past his release. (Id.) Petitioner, therefore, argues that he would be harmed if he was required to fully exhaust his administrative remedies. (Id.) Third, Petitioner contends that Respondent did not address whether Congress "gave the BOP authority to deny inmates with a medium to high risk from applying their FSA earned time credits." (Id.) Petitioner argues that his Petition should be granted because Congress did not authorize the BOP under the FSA or 18 U.S.C. § 3624 & 3632 "to deny inmates who have medium risk or high risk of recidivism from applying their earned time credits that they have accrued." (Id.) Finally, Petitioner argues that he never claimed he had a liberty interest in being placed on home confinement or RRC. (Id.) Petitioner, however, asserts that "he has a liberty interest in his good time and no state may constitutionally deprive him of that good time without due process of law." (Id.) As an Exhibit, Petitioner attaches the following: (1) A copy of his "FSA Time Credit Assessment" (Id., pp. 10 – 11); and (2) Petitioner's Affidavit (Document No. 14).

On May 10, 2023, Petitioner filed what this Court construed as Petitioner's Supplemental Reply. (Document No. 15.) In his Supplemental Reply, Petitioner notes his discovery of "persuasive District Court case law that supports" his Petition. (Id.) Petitioner then includes a summary of the case law that he believes supports the granting of his Petition. (Id.) As an Exhibit, Petitioner attaches the following: (1) A copy of Sierra v. Jacquez, 2022 U.S. Dist. LEXIS 234525 (W.D.Wash. Dec. 27, 2022) (Document No. 15-1, pp. 1 – 7); (2) A copy of Komando v. FCI Berlin

Warden, 2023 U.S. Dist. LEXIS 11477 (D.N.H. Jan. 13, 2023) (Id., pp. 8 – 18); and (3) A copy of Komando v. FCI Berlin Warden, 2023 U.S. Dist. LEXIS 19054 (D.N.H. Feb. 6, 2023) (Id., pp. 19 – 20.)

On May 10, 2023, Petitioner filed his Motion for Summary Judgment. (Document No. 16.) In his Motion, Petitioner merely reiterates the arguments asserted in his Reply and argues he is entitled to summary judgment. (Id.) On June 5, 2023, Petitioner filed what the Court construed as a Notice of Exhaustion. (Document No. 17.) In his Notice, Petitioner claims that he has now fully exhausted his administrative remedies. (Id.)

## ANALYSIS

1. **Failure to Exhaust:**

Generally, a federal inmate must exhaust available administrative remedies before filing a writ of habeas corpus in federal court. Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)(requiring exhaustion in a Section 2241 action). Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See Timms v. Johns, 627 F.3d 525, 530-33 (4th Cir. 2010); McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated

"[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

Unlike the exhaustion requirement for Section 1983 and Bivens actions, the exhaustion requirements for Section 2241 Petitions are judicially imposed. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.), cert. denied, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)); also see Reeder v. Phillips, 2018 WL 2434003, * 3 (N.D.W.Va. June 12, 2008)(Since the statute authorizing habeas matters does not expressly require administrative exhaustion, the court retains discretion to disregard the exhaustion requirement in "pressing circumstances."). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]xhaustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals." Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Reeder, 2008 WL 2434003, at * 3("Unless the agency is *certain* to rule adversely, however, a petitioner's unsupported prediction of failure does not excuse his lack of administrative exhaustion.")(emphasis added).

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate

7

is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Petition and Memorandum in Support, Petitioner argues that he should be excused from exhausting his administrative remedies because "his claims are clearly based on statutory construction and statutory interpretation and Slusser cites that it would cause him irreparable harm." (Document Nos. 1 and 2.)

In her Response, Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not fully exhaust his administrative remedies. (Document No. 11, pp. 2 - 4.) Respondent acknowledges that Petitioner filed four administrative remedies in relation to his eligibility to earn or apply FSA credit. (Id., p. 3.) Respondent, however, notes that "none of Petitioner's administrative remedies or appeals have gone to the Central Office level, been accepted, and had a response issued as would be required in order for Petitioner's administrative remedies to be deemed exhausted." (Id., pp. 3 – 4.) In support, Respondent submits the Declaration of Destiny Spearen, a Paralegal at the Consolidated Legal Center at FCI Beckley. (Document No. 11-1, pp. 2 - 3.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Spearen acknowledges that Petitioner has filed four administrative remedies concerning his eligibility to earn or apply FSA credit. (Id.) Specifically, Mr. Spearen states, in pertinent part, as follows:

* * *

7. A review of Petitioner's administrative remedy history reveals he has filed or attempted to file four administrative remedies in relation to his eligibility to earn or apply FTC.

8. Petitioner first filed administrative remedy 1110598-R1 to the regional appeal level on February 15, 2022, and this remedy was rejected the next day.

9. Petitioner then filed administrative remedy 1110816-F1 at the institutional level on February 17, 2022.

10. The remedy was accepted, and Petitioner received a response on February 28, 2022.

11. Petitioner filed administrative remedy 1145134-F1, again at the institutional level, on December 16, 2022. Petitioner received a response on January 30, 2023.

12. Petitioner then appealed this response to the regional level with remedy 1145134-R1 on February 7, 2023.

13. This remedy was accepted for review on February 10, 2023, and a response has not yet been provided.

14. Accordingly, none of Petitioner's administrative remedies or appeals have gone to the Central Office level, been accepted, and had a response issued.

\* \* \*

(Id., pp. 2 - 3.) As an Exhibit, Ms. Spearen attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated February 28, 2023 (Id., pp. 8 – 10).

In Reply, Petitioner again argues that he is not required to exhaust his administrative remedies because his claims are clearly based on statutory interpretation and exhaustion would cause him irreparable harm. (Id., pp. 4 – 5.) Citing EEOC v. Seafarers Int'l Union, 394 F.3d 197 (4th Cir. 2005) and Coleman v. U.S. Parole Comm., 664 Fed.Appx. 159 (3rd Cir. 2016), Petitioner argues that his "statutory interpretation claims are legal and fail to implicate the BOP's expertise in any meaningful manner." (Id.) Thus, Petitioner argues that he is not required to exhaust his administrative remedies. (Id.) Citing Nelson v. Cox, 2021 WL 1221178 (D.S.D. April 1, 2021), Petitioner further argues that he will suffer irreparable harm. (Id.) Petitioner explains he will suffer irreparable harm because "[i]f Petitioner's statutory interpretation is correct and he is eligible to apply his earned time credits despite his medium risk of recidivism, Petitioner is fifty days past his

release." (Id., p. 5.) Petitioner filed his Notice of Exhaustion on June 5, 2023. (Document No. 17.) In his Notice, Petitioner claims that he has now fully exhausted his administrative remedies. (Id.)

Based upon a review of the record, the undersigned finds that Petitioner failed to fully exhaust his available administrative remedies. As stated above, it is undisputed that Petitioner failed to fully exhaust his administrative remedies concerning the claims contained in his Petition *prior* to Petitioner filing the above action. Petitioner's alleged exhaustion of his remedies subsequent to the filing of his Petition is insufficient. Timms v. Johns, 627 F.3d at 530-33(Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241.) Petitioner further contends that he should be excused from exhausting his remedies because his claims are based upon statutory interpretation. This exact issue was recently considered and rejected in this District. See Welch v. Heckard, 2023 WL 6885005, * 2 – 3 (S.D.W.Va. Sep. 19, 2023). In Welch, United States Magistrate Judge Cheryl A. Eifert stated as follows concerning Petitioner's reliance on EEOC v. Seafarers Int'l Union, 394 F.3d 197 (4th Cir. 2005): "*Seafarers* is inapposite because it does not involve exhaustion of administrative remedies in habeas cases; rather, *Seafarers* addresses *Chevron* deference, a standard applied to agency interpretations of statutes." Id. at * 2. To the extent the petitioner relied upon United States v. Savage, 737 F.3d 304 (4th Cir. 2013), Judge Eifert explained that "the *de novo* standard of review applies to courts of appeal considering the statutory interpretations of district courts, and it has no application to the requirement that a habeas petitioner exhaust his administrative remedies." Id. Finally, to the extent the petitioner relied upon Coleman, Judge Eifert determined as follows:

> The only relevant case cited by Welch is *Coleman v. US Parole Comm'n*, in which the United States Court of Appeals for the Third Circuit stated: "[E]xhaustion is not required with regard to claims which turn only on statutory construction. This is especially so where it is unlikely that the agency will change its position, or where the claims turn on broader questions of legal interpretation." 644 Fed. Appx. 159, 162 (3rd Cir. 2016). However, *Coleman* is not binding authority on this Court,

10

which lies in the Fourth Circuit. There is some Fourth Circuit precedent indicating that courts may excuse an exhaustion requirement where the dispute is a matter of statutory construction, although not in the context of habeas petitions. *See McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991).

Id. The undersigned adopts and incorporates Judge Eifert's above findings. Therefore, the undersigned finds that Petitioner should not be excused from exhausting his remedies because his claims are based upon statutory interpretation.

Next, the undersigned will consider Petitioner's claim that he should be excused from exhausting because he will suffer irreparable harm. Petitioner contends he will suffer irreparable harm because "[i]f Petitioner's statutory interpretation is correct," Petitioner is past his release date. Again, this exact issue was recently considered and rejected in this District. See Welch v. Heckard, 2023 WL 6885005, at * 3. In Welch, Judge Eifert stated as follows:

> Welch argues he should not be required to exhaust because he would suffer irreparable harm, as he alleges that if his time credits were applied, he would have been released on June 20, 2023. (ECF No. 2 at 4). Welch cites to *Nelson v. Cox*, No. 4:20-CV-04199-KES, 2021 WL 1221178, at *2 (D.S.D., Apr. 1, 2021), where the District of South Dakota found that a petitioner had sufficiently shown irreparable harm where he alleged he would have already been released if his FSA earned time credits were applied. (*Id.*). However, other courts have more closely examined similar allegations of irreparable harm and found them to be insufficient. In *Salter v. Fikes*, Salter raised a claim almost identical to Welch's—alleging he was entitled to the application of FSA time credits and that he would suffer irreparable harm if required to exhaust, because he alleged his release date had already passed. No. 20-CV-2253 (ECT/ECW), 2021 WL 2365041, at *7 (D.Minn., May 5, 2021), *report and recommendation adopted*, No. 20-CV-2253 (ECT/ECW), 2021 WL 2354934 (D. Minn. June 9, 2021). The court rejected Salter's irreparable harm argument, noting that his current risk recidivism level was medium, making him ineligible for the application of his earned time credits. *Id.* The court noted that Salter may be able to petition the Warden for application of his time credits but that Salter had made no mention of the process in his petition. *Id.* at *7, n.3. Welch similarly has failed to show that he is eligible for the application of his time credits; Welch is not at a minimum or low risk of recidivism, and he has not submitted, nor has he had a petition to apply his time credits approved by the Warden, making him currently ineligible for the application of time credits. *See Green v. Hudson*, No. 23-3115-JWL, 2023 WL 4374013, at *2 (D. Kan., June 29, 2023); *Taylor v. Berlin*, No. 23-CV-150-SM, 2023 WL 4055721, at *3 (D.N.H., June 14, 2023). Therefore, Welch has not credibly alleged he will be irreparably harmed if he is made to

complete the administrative grievance process.

Id. Like Welch, Petitioner acknowledges that his current risk of recidivism score is medium making him ineligible for the application of his earned time credits. Although Petitioner acknowledges his awareness that he may petition the Warden for application of his credits, there is no evidence that Petitioner has obtained such approval from the Warden or even taken the appropriate steps to petition the Warden for such approval. Accordingly, the undersigned finds that Petitioner will not be irreparably harmed if he is required to exhaust his administrative remedies.

Based on the foregoing, the undersigned respectfully recommends that the District Court dismiss the above action because Petitioner failed to properly exhaust the available administrative remedies *prior* to filing his Petition.

**B.      Application of Time Credits Under the FSA:**

Notwithstanding the Petitioner's failure to exhaust, the undersigned will briefly consider the merits of Petitioner's claim. On December 21, 2018, the FSA of 2018 was signed into law and initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Specifically, prisoners that successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii). A prisoner, however, may not earn FSA time credits

"for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter," December 21, 2018. 18 U.S.C. § 3632(d)(4)(B).

The FSA created a "new risk and needs assessment system to provide appropriate programing for prisoners." Musgrove v. Ortiz, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, FSA added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. See Goodman v. Ortiz, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). On July 19, 2019, the Attorney General published this system, entitled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). The BOP uses PATTERN to evaluate "the recidivism risk of each prisoner as part of the intake process, and classifies each prisoner as having minimum, low, medium, or high risk for recidivism." United States v. Tinsley, 2021 WL 5084691, * 16 (D.Md. Nov. 2, 2021); also see 18 U.S.C. §§ 3632(a)(1), (4)). The BOP further utilizes PATTERN to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." Id. Two scores are calculated by utilizing PATTERN: (1) A person's risk of reoffending in general; and (2) A person's risk of reoffending with a crime of violence. For males, PATTERN includes the following "risk items": (1) An inmate's current age; (2) Whether he has a Walsh conviction; (3) Whether he committed a violent offense; (4) His criminal history points; (5) His history of escapes; (6) His history of violence; (7) His education score, such as whether he is enrolled in a GED program or has the equivalent of a high school diploma; (8) Completion of drug treatment programs; (9) All incident reports in the past 120 months; (10) Whether these incident reports were serious; (11) The amount of time since the last incident report; (12) Whether he agreed to participate in the financial

responsibility program;[3] (13) The number of eligible programs completed; and (14) The number of work programs completed. Depending on the scoring in each category, the inmate is given fourteen general and violent scores that are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. At a minimum, the BOP must reassess an inmate's PATTERN score annually if the inmate successfully participates in evidence-based recidivism reduction programming or productive actives. 18 U.S.C. § 3632(d)(5).

Under the FSA, eligible inmates may *earn* time credits irrespective of his or her recidivism risk. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.42. Only inmates with low and minimum risk scores, however, may have these earned credits applied to his or her rerelease custody or early transfer to supervised released. Id.; also see 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(c)(1) and (d)(1). Title 18 U.S.C. § 3624(g) provides, in pertinent part, as follows:

> (1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
> 
> > (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
> > 
> > (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
> > 
> > (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
> > 
> > (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—
> > 
> > > (I) has been determined under the System to be a minimum or low

---

[3] The PATTERN form on the BOP's website appears to contain a misnumbering. Although there appears to be fifteen "risk factors," the from omits number 12 from its numbering. *See* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3

> risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>
> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison ....
>
> (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624. Concerning prerelease custody, 28 C.F.R. § 523.44(c) provides as follows:

> (c) Prerelease custody. The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b) of this section:
>
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
>
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that: (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release; (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and (iii) The prisoner is unlikely to recidivate.

28 C.F.R. § 523.44(c). Regarding early transfer to supervised release, 28 C.F.R. § 523.44(d) states

as follows:

> (d) Transfer to supervised release. The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
>
> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
>
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
>
> (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

28 C.F.R. § 523.44(d). Accordingly, a prisoner wishing to have earned time credit applied toward placement in prerelease custody must either (1) be determined to be at minimum or low risk for the last two reassessments, or (2) the warden has approved the prisoner's petition determining that, among other things, the prisoner is unlikely to recidivate. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.44(c). A prisoner wishing to have earned time credit applied toward his or her early placement in supervised release must be at minimum or low risk as of the last reassessment by the prison. See 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.44(d).

In the instant case, it is undisputed that Petitioner has a medium risk of recidivism score. Although Petitioner may clearly *earn* time credits with a medium risk of recidivism score, he may not have these credits *applied* to his prerelease custody or early transfer to supervised release. See King v. Joseph, 2023 WL 6626630, * 6 (D.S.C. Sept. 14, 2023)("[T]he First Step Act expressly states that an inmate with a medium or high risk of recidivism according to his PATTERN score may not have successfully completed recidivism reduction programs and productive activities applied towards his time credits until he receives a minimum or low risk PATTERN score for two consecutive assessments."); Compton v. Brown, 2023 WL 5767323 (N.D.W.Va. Aug. 18, 2023)("Petitioner is not entitled to have credits *applied* while he is at 'medium' risk of recidivating."); Frazier v. Strong, 2023 WL 5155939, * 4 (D.S.C. June 27, 2023)("While [Petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i) – (ii), the BOP cannot apply those time credits to [his] sentence unless and unless [he] has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release.")(citation omitted). Additionally, there is no indication that Petitioner has successfully petitioned the Warden for approval of transfer to prerelease custody or supervised release. See

Welch v. Heckard, 2023 WL 6885005, at * 4("Because Welch is at a high recidivism risk level and has not had a petition to apply time credits approved by the Warden, he is not eligible for the application of his FSA time credits."). To grant Petitioner such approval, the Warden would have to determinate the following: (1) Petitioner would not be a danger to society if transferred to prerelease custody or supervised release; (2) Petitioner made a good faith effort to lower his recidivism risk through participation in programs or productive activities; and (3) Petitioner is unlikely to recidivate. Again, there is no indication that Petitioner has been granted such approval by the Warden. Accordingly, the undersigned finds that Petitioner is not entitled to *habeas* relief.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1) and Motion for Summary Judgment (Document No. 16), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: October 25, 2023.

Omar J. Aboulhosn
United States Magistrate Judge